No. 23,766.

ISRAEL COOPER, *Appellee*, v. THE GEORGE A. FULLER CONSTRUCTION COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. COMPENSATION ACT — *Loss of an Eye — Demand— Evidence — Findings — Measure of Damages.* The record examined, and the evidence deemed sufficient to support the findings that the plaintiff was in the employ of the defendant when injured, and that he made demand for compensation; also that the verdict was for the amount provided by statute under the circumstances shown.

2. SAME—*Evidence—Instructions.* No material error discovered in relation to the reception or rejection of evidence, or in regard to the instructions.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed June 10, 1922. Affirmed.

*W. L. Wood,* of Kansas City, for the appellant.

*J. E. McFadden, O. Q. Claflin,* both of Kansas City, and *Russell Field,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff while working at a rock crusher lost the sight of his right eye and sued to recover compensation, alleging that the injury occurred while he was in the employ of the defendant. He recovered judgment for $1,320, and the defendant appeals. The errors assigned relate to the reception and rejection of evidence, the instructions and denial of a new trial.

The plaintiff's claim is that he was employed by the construction company in building a cantonment at Camp Funston, and put to work at a stone crusher some miles away.

The defendant denies that the rock quarry and crusher were operated by it, and that the plaintiff was in its employ. Counsel says:

"There is a total absence of proof on the part of the plaintiff showing that plaintiff was in the employ of or was paid by or that plaintiff's injuries arose out of or in the course of his employment with the defendant."

Aside from these contentions it is alleged that the testimony touching the plaintiff's average earnings was insufficient; also, that no demand was proven, and that, in any event, if the plaintiff should be held entitled to recover, the amount should be $660 instead of $1,320.

It seems that the construction company built the cantonment for the government and was to be paid ten per cent above its cost. The records were not in possession of the defendant, but at Washington. The plaintiff testified that he was sent up to Funston by a "man-catcher," and when he reached there he went to doing the work he was detailed to do and was furnished a place to sleep and his meals, and was paid in money in envelopes on Saturday, at the construction company's pay office.

"This office was about two miles from where I was working. I went down to this office each Saturday for my pay. There were about a thousand or more men getting their pay there when I went down there on Saturdays."

Certain pay envelopes were introduced in evidence. One of these read: "Name I. Cooper. National Army Cantonment, Fort Riley, Kansas, George A. Fuller Construction Company." The plaintiff testified that after his injury he was taken to the hospital and stayed there seven days, came back to the camp and stayed one night, and then went down to the office where he had always received his money, and talked with somebody. He got a paper and

Cooper v. Construction Co. .

presented it to the cashier and got his pay envelope. The pay amounted to $47.40, after taking out $7 for board. It appears that the plaintiff received some sort of notification to call at some office for the purpose of discussing his claim against the company, and went to the Reserve Bank building.

"I talked with some person relative to my claim. I was up there half an hour. They didn't pay me anything for the injury which I had received. I never received any pay or compensation from anybody for the injuries I received. . . . I made demand for compensation at Camp Funston right after I got hurt. Right away after I came home, the next day. That is, I mean when I got back to camp. It was made just before I came home; the next day. I made the demand the same day I got this pay envelope. . . . That was the same building I was in the habit of going to for my pay checks. . . . When this man gave me my pay check and I asked him for compensation, and he didn't give me any answer at all. I told him I had lost my eye, working, and it was right they should give me something for it; and he never gave me any kind of a settlement or said about whether they was going to settle it or not. Didn't give me any kind of an answer at all."

While this evidence is not as clear and definite as it might be, we think it sufficient on which to base the conclusion that he was working for the defendant and was injured while so doing and demanded of the paymaster a settlement for his injury.

The plaintiff testified that he was classified as a laborer; that he was in Camp Funston from September until November; that he lost his eye in October; that he saw the pay envelopes of other men who worked out there and one man got $75 for one week's work and another $50, and that he himself received sixty cents an hour, working ten hours a day and getting paid for eleven, or $6.60 a day; that before going to work there he had worked at Kansas City, and that prior to the 17th of October, 1917, when he was injured, for more than a year workmen like himself were getting fifty cents an hour. He also stated that during the month of October, 1917, and for a year before that time the prevailing union rate paid to workmen in Kansas City was fifty-seven and a half cents an hour.

The vice president of the defendant company testified, among other things, that a common laborer was on a flat rate of pay and the prevailing union rate paid in Kansas City applied not only as to the rate of pay but to overtime.

The envelopes received in evidence were, under the circumstances, competent for what they were worth, and we find no material error in the record touching the reception or rejection of evidence.

The defendant sought by requested instructions to have the compensation, if any, limited to $6 a week for 110 weeks and still contends that this is all the plaintiff is entitled to, if anything.

The jury found in answer to special questions that the plaintiff was working on the rock crusher operated by and under the direction of the defendant; that the average weekly earning was $30; and that he was employed by the defendant at the time of the accident.

Section 4, chapter 226 of the Laws of 1917 provides that when a workman has been employed less than a year, the average annual earnings shall be fifty-two times the average weekly amount which during the twelve months immediately preceding the accident was received by a person in the same grade of employment at the same work by the same employer, or if there is no person in the same grade so employed, then fifty-two times the average weekly earnings of a person in the same grade employed by the same or other employer in the same district at the same or similar work or employment, and that the average weekly wages of a workman shall be one-fifty-second part of his average annual earnings.

While the plaintiff's testimony indicated that he received more than $30 a week average, the jury found the amount to be $30. By paragraph 15 of section 3 of the act referred to, for the loss of an eye, or the sight thereof, fifty per cent of the average weekly wages during 110 weeks is the limit of recovery, which is again limited by the same section to $12 a week. The amount returned by the jury was for 110 weeks at $12, and this is within the provisions of the statute.

Finding no material error, the judgment is affirmed.