No. 24,970.

WALTER TURMAN, *Appellee,* v. THE SOLVAY PROCESS COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

COMPENSATION ACT—*Verdict and Judgment for Plaintiff—Assignments of Error Not Well Founded.* Various assignments of error in an action under the workmen's compensation act are held not to be well founded.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed November 10, 1923. Affirmed.

*C. M. Williams,* and *D. C. Martindell,* both of Hutchinson, for the appellant.

*A. C. Malloy, R. C. Davis,* and *W. F. White,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one for compensation. The plaintiff recovered, and defendant appeals.

The defendant is engaged in the business of manufacturing soda ash, bicarbonate of soda, and similar products, in the city of Hutchinson. The plaintiff, a laborer, working for the defendant, while engaged with another workman in hanging some 200-pound motors to the ceiling, suffered an injury to his hand. He was given first-aid treatment by a nurse in defendant's employ, then treated by the company's physician, and afterwards underwent an operation at a hospital by the company's surgeon. In course of time he returned to the company. At first he did light work and later returned to

his original position. At the time of returning to work he executed a release which reads:

"Received this day from the above named employer, the sum of Fifty-eight and 50-100 Dollars ($59.63) which sum being fixed by the mutual agreement of both parties such part of my wages for the period of (Hours Lost) 238½ beginning on the 18th at noon day of November, 1920, and ending on the 20th day of December, 1920, as I am entitled to and making in all with the payments already received by me the sum of Fifty-eight and 50/100 Dollars (58.50) in consideration of which I hereby release and forever discharge said employer, his heirs, his executors or assigns from any and all action, causes of action, claims, demands or liability arising under or which may in any manner arise under the Workmen's Compensation Act of the State of Kansas, or under any other statute or common law for damages, loss, suffering, disfigurement, injury or injuries which heretofore have been or which hereafter may be sustained by me in consequence of an accident which occurred to me on or about the date and hour written. I hereby acknowledge this payment as being the final payment of compensation due me on account of injury partially described above."

His employment continued for less than one year. He sued under the compensation act, alleging permanent partial disability. The defendant, in its answer, set up the release. To the answer the plaintiff replied as follows:

"That on or about the day he returned to work at defendant's plant, the defendant, through its employees presented to him a paper for signature which they represented was a receipt for that part of his wages due him for the time which he had lost from work on account of his injuries. Plaintiff alleges that he is an uneducated man and barely able to sign his name, that he never progressed beyond the —— grade in the common schools. That he did not read or attempt to read the instrument which was submitted to him, but that he asked the foreman whether or not this covered his claim for permanent injuries, and that the foreman assured him it did not, but was simply a receipt for his wages for lost time and temporary disability; and that settlement for his permanent injuries could not be made until later, when they were more definitely ascertained. Plaintiff alleges that relying on said assurance he signed said receipt. That if said receipt by its terms purported to be a release to the defendant from liability for plaintiff's permanent injuries then said receipt was obtained by means of fraud and deceit on the part of the defendant's agents as above set forth. That the sum named in the copy of release incorporated in defendant's amended answer is manifestly inadequate to cover plaintiff's permanent disability, and that it is clearly nothing more than settlement for plaintiff's lost time."

There was evidence which showed that, as a result of the injury, the spread of the hand, or the measurement of the extension, was limited—that from the little finger tip to the thumb there was two inches less spread on the injured (right hand) than on the left hand;

that the grip of his right hand is one-fourth as much as in the left; that he was unable to fully extend the fingers; that there was a limitation of perhaps 15 per cent of the extension of the fingers; that there was no way of remedying such condition as found in the hand by an operation or treatment; that it was a permanent injury. Several physicians testified that there was permanent partial injury to the hand. Dr. J. E. Foltz, testifying for the defendant, said:

"I have not seen him lately but he is bound to have some permanent injury. If you don't manipulate the fingers in an injury of that kind when you have pus and an inflamed condition, they are always stiff, in any joint any place, and you get a limitation of motion, it ceases to be sore or painful. . . . I don't think he will ever have absolutely the full use of his hand and fingers now."

The defendant introduced testimony to show that the plaintiff did not obey the instructions of the physicians, and did not take the proper precautions, nor exercise the care that might have effected a cure. These disputed matters were resolved by the jury in favor of the plaintiff. The jury returned a general verdict for the plaintiff for $1,276.66, less $59.63 (the amount of the release) and returned answers to the special questions as follows:

"Q. No. 1. State whether you find that the plaintiff is permanently partially disabled. A. Yes.

"Q. 3. State whether plaintiff's injury is apparent by objective examination; that is by looking at his hand. A. Yes.

"Q. 4. State whether or not it amounts to the entire loss of use of his hand. A. No.

"Q. 5. State what you find to have been the average weekly wages of workmen who had been employed by the defendant company for as much as a year previous to plaintiff's injury in work the same grade employed at the same work or similar work. A. 55 cents per hour.

"Q. 6. State whether or not you find the defendant's employees misrepresented the nature of the release to plaintiff at the time he signed it. A. Partially by a failure on the part of Otto Stevens to read and explain in full the wording of the receipt signed by plaintiff.

"Q. 7. State whether or not you find that the plaintiff and defendant were mutually mistaken as to the full nature and extent of plaintiff's injury at the time the release was signed. A. Yes."

The court sustained a motion of plaintiff for judgment on the special findings in the sum of $2,430.37.

The defendant complains of an instruction with reference to the burden of proof in connection with the release. The defendant pleaded the release as one of its defenses. The plaintiff's reply put the release in issue. The court instructed the jury that the burden

of proof was on the plaintiff to prove his case and on the defendant to prove its defenses. In other instructions the court quite clearly advised the jury with reference to the validity of the release, and under what circumstances it could be set aside. However, it appears that on the trial the defendant made no objection to the instructions as given, nor any request for special instructions. Doubtless the court would have instructed the jury that the burden was on the plaintiff to prove the allegations of his reply had attention been directed to it. When a party desires special instructions to be given to the jury, such instructions should be reduced to writing, numbered, etc., and delivered to the court. (Gen. Stat. § 7185.) It has frequently been held that where the general charge of the court fairly presents the case to the jury, a party who desires an instruction upon a particular question should request it and cannot predicate error upon the omission if he has not done so. (*Hamilton v. Railway Co.*, 95 Kan. 353, 147 Pac. 1126; *Murphy v. Gas & Oil Co.*, 96 Kan. 321, 150 Pac. 581, and cases cited; *Warders v. Railroad Co.*, 105 Kan. 4, 181 Pac. 599; 3 C. J. 850, 855.) It is doubtful if any prejudice resulted because of the instruction as given or the failure of the court to give an additional instruction on the burden of proof. Under the circumstances, a retrial should not be required for that reason. The defendant complains of the action of the trial court in sustaining plaintiff's motion for judgment on the special findings. The plaintiff's injury did not come under the specific provisions of the schedule, and hence falls under clause 19 of section 3 of the Laws of 1917. The plaintiff offered to accept the minimum of $6.00 per week, and the final judgment of the court of $2,430 was figured on that basis. The jury having found the essential facts, from ample evidence, it was proper for the court to apply thereto the measure of recovery as fixed by the compensation act. (Laws of 1917, ch. 226.) See, also, *Stefan v. Elevator Co.*, 106 Kan. 369, 187 Pac. 861; *Chance v. Coal & Mining Co.*, 108 Kan. 121, 193 Pac. 889; *Duncan v. Packing Box Co.*, 110 Kan. 494, 204 Pac. 543; *Emry v. Cripes*, 110 Kan. 693, 205 Pac. 598; *Cooper v. Construction Co.*, 111 Kan. 391, 207 Kan. 798; *Burchett v. Manufacturing Co.*, 114 Kan. 138, 217 Pac. 284.)

We have considered other objections but find nothing to warrant a reversal. The judgment is affirmed.